TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00588-CR







The State of Texas, Appellant



v.



Michael Todd Gill, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-97-0250-S, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING







 Appellee Michael Todd Gill was convicted on one count of aggravated assault and
sentenced to serve twenty years in the state penitentiary. After judgment was rendered, Gill filed a motion
for new trial on the ground of ineffective assistance of counsel. Following two evidentiary hearings, the
motion for new trial was granted. In two points of error, the State argues that the trial court abused its
discretion in granting Gill a new trial. We will affirm.


BACKGROUND

 This case presents some very unique facts. Michael Todd Gill was indicted on two counts
of aggravated assault for allegedly striking his girlfriend, Kimberly Cote, with a claw hammer on one
occasion and burning her with a frying pan on a separate occasion. Following the indictment, Gill hired
attorney Jack Bundrant to substitute for his court-appointed attorney. Gill stated to the court that he
wanted Bundrant as his trial attorney despite Bundrant's past health problems and recent hospital stay for
ongoing health problems.

 Fearing the potential for a mistrial due to Bundrant's health, the State requested an in
camera hearing to allow the court to reconsider its decision to substitute Bundrant as Gill's counsel. After
Bundrant denied any lingering effects from his health problems and assured the trial court that he was
capable of handling Gill's defense, the case proceeded to trial.

 At the conclusion of the evidence, the jury returned a verdict convicting Gill on one count
of aggravated assault for striking Cote with a claw hammer and sentenced him to twenty years in the state
penitentiary. (1) Judgment was rendered accordingly. Following the entry of judgment, Gill filed a motion for
new trial on the ground of ineffective assistance of counsel. As discussed in more detail below, Gill asserted
that Bundrant's poor mental and physical condition prevented him from effectively representing Gill at trial. 
Pursuant to Gill's motion, the court conducted two evidentiary hearings in which extensive medical records
and testimony concerning Bundrant's health were reviewed by the court. Following these evidentiary
hearings, the trial court, without stating a reason, granted Gill's motion for new trial. The State appeals.


DISCUSSION

 It is well-established that the granting of a motion for new trial rests within the sound
discretion of the trial court. See State v. Gonzalez, 820 S.W.2d 9, 12 (Tex. App.--Dallas 1991), aff'd
855 S.W.2d 692, 694 (Tex. Crim App. 1993). The ruling of a trial judge is presumed to be correct and
the burden rests upon the appellant to establish the contrary. Lee v. State, 322 S.W.2d 260, 262 (Tex.
Crim. App. 1958). Furthermore, when no findings of fact or conclusions of law are made by the trial
court, we uphold the judgment if any appropriate ground exists to support it. See State v. Read, No. 3-97-186-CR, slip op. at 5 (Tex. App.--Austin March 12, 1998, no pet. h.). 

 In two points of error, the State argues that the trial court abused its discretion by failing
to adhere to the well-established Strickland test governing claims of ineffective assistance of counsel. See
Strickland v. Washington, 466 U.S. 688 (1984). Strickland requires that a defendant establish by a
preponderance of the evidence that (1) counsel's representation fell below the standard of professional
norms, and (2) but for counsel's deficiency, there is a reasonable probability that the outcome would have
been different. Id. The State contends primarily that this is an objective test which requires Gill to point
to the record and identify specific acts or omissions by Bundrant that were below the professional norm
of reasonableness and led to an improper verdict. The State therefore challenges this Court to review the
record and find such an act or omission that would uphold the trial court's judgment in granting Gill a new
trial.

 Gill, on the other hand, argues that in a case of this kind, where the attorney's mental and
physical condition are called into question, the trial court is allowed to consider factors which may or may
not be apparent on the face of the record, but did render counsel ineffective. Therefore, Gill contends that
the trial court had the discretion to grant a new trial if it determined that Bundrant's physical and mental
deficiencies themselves resulted in defense counsel being ineffective.

 The State's contention that Strickland is an objective test that requires the defendant to
point out "legal errors" which exist on the record is not without merit. However, it fails to consider two
important points governing our review of this order granting a new trial. First, we do not review the
Strickland standards in a de novo fashion; we review them through the prism of an abuse of discretion
standard. Therefore, we must examine whether the trial court's decision to grant a new trial was so outside
the zone of reasonable disagreement that it is subject to reversal. Cantu v. State, 842 S.W.2d 667, 682
(Tex. Crim. App. 1992) (if trial judge's decision is so clearly wrong as to lie outside zone within which
reasonable persons might disagree then decision should be reversed). 

 Second, as stated above, because no findings of fact or conclusions of law were either
requested or made by the trial court, the court's judgment granting a new trial must be upheld if any
appropriate ground exists to support it. Read, slip op. at 5. We note that one such ground is that the trial
court retains the sound discretion to grant a new trial if it believes a new trial is needed in the "interest of
justice." See Gonzalez, 855 S.W.2d at 694 (trial judges have had discretion to grant new trials in interest
of justice for more than one hundred twenty years); State v. Dixon, 893 S.W.2d 286, 288 (Tex.
App.--Texarkana 1995, no pet.) (trial court did not abuse its discretion in granting new trial in interest of
justice); State v. Lyons, 820 S.W.2d 46, 48 (Tex. App.--Fort Worth 1991, no pet.) (trial court retains
discretion to grant new trial in the interest of justice, apparently on any ground justice requires). Having
said this, we will now discuss whether the trial court erred in granting Gill a new trial. 

 In his brief, Gill alleges various "legal errors" by Bundrant which he contends support a
claim of ineffective assistance of counsel. First, during voir dire, one potential juror indicated that he was
hesitant to serve because he had a brother who worked for the prison system. The juror feared that if he
were on a jury that sent someone to prison, that person might hurt his brother if sent to the unit where his
brother worked. Despite the court's advice that the juror's bias could work in favor of Gill, Bundrant
struck the juror from the panel. 

 Second, Gill directs our attention to several instances where Bundrant either failed to object
or made untimely objections. For example, the detective who arrested Gill testified without objection that
Gill told a third party that the "bitch" (referring to Cote) "caused" him to be arrested. This testimony was
obviously elicited to prejudice Gill before the jury and to discredit Cote who would later testify on Gill's
behalf. Finally, Gill asserts that Bundrant ineffectively examined key witnesses which in turn prejudiced his
defense. Specifically, Gill directs us to Bundrant's direct examination of Cote during the guilt/innocence
phase of trial and Bundrant's cross-examination of Gill's ex-wife, Sally Gill, during the punishment phase. 
During Bundrant's examination of Cote, Gill asserts that Bundrant admitted Gill's guilt by asking the
following question: "Are you asking the jury to be lenient with him and not send him to the penitentiary?" 
Gill contends that because Cote testified on Gill's behalf, Bundrant should have avoided all questions
regarding punishment until the punishment phase of trial. 

 During Bundrant's cross-examination of Sally Gill, Gill asserts that Bundrant failed to
impeach her even though she gave damaging testimony regarding Gill's past domestic violence. Gill
contends that it was critical for Bundrant to impeach her with her criminal history as well as an alleged
history of psychiatric hospitalization since she was the State's only witness during the punishment phase.

 Based upon these allegations, without more, we regard this as a close case, even applying
the abuse of discretion standard. We are mindful that the review of counsel's representation is highly
deferential and that courts indulge a strong presumption that counsel's conduct falls within a wide range of
reasonable representation. Strickland, 466 U.S. at 689. However, we believe that in this case there are
other factors that we must consider before determining whether the trial court abused its discretion in
granting a new trial. 

 As stated above, Gill argues that it was well within the trial court's discretion to consider
Bundrant's physical and mental deficiencies which may have rendered Bundrant ineffective at trial. We
agree.

 In a case in which mental and physical deficiencies of counsel are called into question, only
the trial court can consider how such deficiencies affected the outcome of the case and whether "justice"
requires a new trial. This is true because the trial court is in the best position to determine whether such
deficiencies affected counsel's attentiveness during trial or whether such deficiencies hindered counsel's
ability to argue and ask questions in a coherent or effective manner. 

 We further note that the record in this case is replete with evidence showing how
Bundrant's ongoing health problems, such as his senility, hearing loss, and his reduced vision, hindered
Gill's defense. (2) For example, Bundrant had to be consistently reminded by either the court or Gill that it
was his turn to examine a witness or approach the bench. Moreover, the record shows that the trial judge's
rulings often confused Bundrant, as did various rules of evidence. Finally, after the court recognized that
Bundrant's paralegal, a disbarred lawyer and convicted felon, was continuously feeding Bundrant notes,
the court felt it necessary to state the following: "The Court would like the record to show that Mr.
Bundrant's paralegal is providing Mr. Bundrant with the necessary questions for Mr. Bundrant to ask during
the course of his trial or at least it appears to the Court that he is." 

 Given these factors, as well as the specific errors cited above by Gill, the trial court could
have reasonably determined that the integrity and reliability of the fact-finding process had been undermined
and that "justice" required a new trial. Moreover, in the absence of findings of fact and conclusions of law
it is impossible to determine the weight the court placed on these factors in reaching its decision to grant
Gill a new trial. Therefore, we hold that on the facts of this case, the trial court was within its discretion to
grant a new trial. We overrule the State's two points of error.


CONCLUSION

 Having overruled both points of error raised by the State, we affirm the trial court's
order granting Gill a new trial.



 

 Mack Kidd, Justice

Before Chief Justice Yeakel, Justices Kidd and Davis*

Affirmed

Filed: April 24, 1998

Publish 













* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).
1. Gill was acquitted on the second count of aggravated assault for allegedly burning Cote with a frying
pan.
2. Medical records entered into evidence at the hearing on the motion for new trial showed that Bundrant
had been hospitalized less than a month before the trial. The records indicate that Bundrant was diagnosed
with nineteen illnesses including: glaucoma, continuous alcohol abuse, severe heart problems, and cerebral
atrophy. 



duct falls within a wide range of
reasonable representation. Strickland, 466 U.S. at 689. However, we believe that in this case there are
other factors that we must consider before determining whether the trial court abused its discretion in
granting a new trial. 

 As stated above, Gill argues that it was well within the trial court's discretion to consider
Bundrant's physical and mental deficiencies which may have rendered Bundrant ineffective at trial. We
agree.

 In a case in which mental and physical deficiencies of counsel are called into question, only
the trial court can consider how such deficiencies affected the outcome of the case and whether "justice"
requires a new trial. This is true because the trial court is in the best position to determine whether such
deficiencies affected counsel's attentiveness during trial or whether such deficiencies hindered counsel's
ability to argue and ask questions in a coherent or effective manner. 

 We further note that the record in this case is replete with evidence showing how
Bundrant's ongoing health problems, such as his senility, hearing loss, and his reduced vision, hindered
Gill's defense. (2) For example, Bundrant had to be consistently reminded by either the court or Gill that it
was his turn to examine a witness or approach the bench. Moreover, the record shows that the trial judge's
rulings often confused Bundrant, as did various rules of evidence. Finally, after the court recognized that
Bundrant's paralegal, a disbarred lawyer and convicted felon, was continuously feeding Bundrant notes,
the court felt it necessary to state the following: "The Court would like the record to show that Mr.
Bundrant's paralegal is providing Mr. Bundrant with the necessary questions for Mr. Bundrant to ask during
the course of his trial or at least it appears to the Court that he is." 

 Given these factors, as well as the specific errors cited above by Gill, the trial court could
have reasonably determined that the integrity and reliability of the fact-finding process had been undermined
and that "justice" required a new trial. Moreover, in the absence of findings of fact and conclusions of law
it is impossible to determine the weight the court placed on these factors in reaching its decision to grant
Gill a new trial. Therefore, we hold that on the facts of this case, the trial court was within its discretion to
grant a new trial. We overrule the State's two points of error.


CONCLUSION

 Having overruled both points of error raised by the State, we affirm the trial court's
order granting Gill a new trial.